IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

DREMA KAY POWELL,

      Plaintiff,

V.                                                 CIVIL ACTION NO. 3:06-0434

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

## MEMORANDUM ORDER

In this action, filed under the provisions of 42 U.S.C. §405(g), plaintiff seeks review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed her application on October 24, 2000, alleging disability commencing December 27, 1995,[1] as a consequence of bursitis and tendinitis in the shoulder, wrist and elbow, constant pain, depression and anxiety. On appeal from an initial and reconsidered denial, an administrative law

---

[1] Plaintiff previously filed an application for disability insurance benefits on July 17, 1996, alleging disability commencing December 17, 1995. Following an initial denial, no further review was sought. She filed a second application on February 12, 1997, alleging disability commencing December 27, 1995. After initial and reconsidered denials, and a hearing, an administrative law judge denied her application on July 27, 1998. The Appeals Council denied a request for review, and on September 6, 2000, this Court affirmed the Commissioner's decision. Plaintiff's insured status expired June 30, 2001, and it was incumbent upon her to establish disability on or before that date. Harrah v. Richardson, 446 F.2d 1, 2 (4th Cir. 1971).

judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review.[2] Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time her insured status expired, plaintiff was thirty-nine years of age and had obtained a high school education and three years of college.[3] Her past relevant employment experience consisted of work as an office clerk/secretary, factory technician, waitress and loan processor. In his decision, the administrative law judge found that plaintiff suffered from "right shoulder rotator cuff tendonitis/bursitis, right medial epicondylitis and mild right ulnar neuropathy at the elbow, a major depressive disorder, and a panic disorder without agoraphobia," impairments which he considered severe. Though concluding that plaintiff was unable to perform her past work,[4] the administrative law judge determined that, between October 24, 2000[5] and June 30, 2001, she had the residual functional capacity for a limited range of light level work. On the basis of this finding, and relying on Rule 202.21 of the medical-vocational guidelines[6] and the testimony of a vocational expert, he found plaintiff not disabled.

---

[2] The Appeals Council twice remanded the case to an administrative law judge for further proceedings. Following supplemental hearings, the administrative law judge again issued unfavorable decisions, and the Appeals Council denied plaintiff's requests for review.

[3] At the time she filed her most recent application, plaintiff indicated that she was in college attempting to complete a four-year degree.

[4] This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[5] At the most recent supplemental hearing, plaintiff's onset date was amended to October 24, 2000.

[6] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. As noted, the period of time under consideration here is only eight months. Plaintiff's testimony and the medical evidence reveal that right upper extremity problems and anxiety with panic attacks are the two conditions plaintiff believes prevented her from working between October 2000 and June 2001. Plaintiff injured her right upper extremity at work in December 1995 and was treated with injections into the shoulder, physical therapy and work hardening. The most recent medical report from a treating physician is dated December 6, 1999. Dr. Bolano, an orthopedic surgeon, noted plaintiff's symptoms had improved, but she still had pain in the right elbow and shoulder with "fairly good" range of shoulder motion. Plaintiff expressed her belief to this physician that she could tolerate her symptoms.

Subsequent to this appointment, the record shows that plaintiff was not seen again for this condition until February 21, 2001 when the Commissioner had her examined by Dr. Greg Chaney. Exam findings included tenderness in the right shoulder with limited range of motion and muscle weakness; tenderness in the elbow with limited range of motion and decreased strength; normal range of motion of the right wrist and hand but diminished grip strength; decreased fine motor function of the hand with difficulty writing longer than a few minutes; difficulty picking up and stacking coins; and problems with buttoning. The cervical spine was also painful on palpation with restricted range of motion. The left upper extremity and all other areas were considered normal. Dr. Chaney's diagnosis was right shoulder rotator cuff tendinitis/bursitis, medial epicondylitis and mild right ulnar neuropathy at the elbow. Unfortunately, this physician was not asked to provide an assessment of plaintiff's work-related capabilities.

At the three hearings in this case, held on February 13, 2002, March 4, 2002 and October 24, 2005, plaintiff testified that her symptoms had not changed much. She stated she could not use her right hand repetitively and had been advised not to try. The medication Neurontin was helpful with the pain which she indicated she experienced most of the time. Plaintiff related at the March 2002 hearing that she could lift fourteen pounds with her right hand and arm, was able to share cooking and housework duties with her husband, care for her personal needs and do "just a little" yard work. Additionally, she was able to attend college full-time during the relevant period, graduating in August 2001. She testified that she was not able to take notes so she recorded lectures, got notes from others and highlighted her text books.

The administrative law judge determined that plaintiff, though unlimited in abilities to sit, stand and walk, could lift and carry less than ten pounds and should never push or pull. Reaching, handling and fingering could be performed frequently but not constantly or repetitively.[7] These limitations are well supported by evidence in the record.

Plaintiff testified that, mentally, she suffered from depression and anxiety and experienced panic attacks. She stated at the first hearing these occurred about three times per month; 2-3 times per month at the second hearing one month later; and 2-4 times per month at the most recent hearing in 2005. The Commissioner had plaintiff evaluated by Robert G. Martin, MA on February 13, 2001. She reported having had psychotherapy for the prior eighteen months but also alleged she had panic attacks 2-3 times each week. Mental status evaluation showed plaintiff to be objectively depressed

---

[7] In the course of clarifying and discussing these limitations with the vocational expert, the administrative law judge explained that plaintiff could not repetitively use her right hand as would be required in assembly line work where the same muscles in the hand are used constantly. He explained that office work such as the vocational expert had listed would require hand use that was not consistently the same task.

but cooperative and polite with good social skills. Concentration was mildly deficient with recent memory mildly to moderately impaired. I.Q. tests produced scores in the eighties with spelling, math and reading skills all at high school level. In terms of daily activities, plaintiff told this examiner she took care of personal needs, did laundry, some cooking and "most" housework as well as managing the household finances and shopping with her husband. Mr. Martin diagnosed major depressive disorder, single, moderately severe, panic disorder without agoraphobia and partner relational problems.

Reports from Julie Barthelmess, MA reflect that she treated plaintiff from April through at least August 2001 for what was diagnosed as major depression, single episode. Her notes contain few findings but do reflect broad mood and affect. In May 2001, she notes plaintiff did well in her classes and was preparing to take classes full-time during the summer. Dr. Susann Lovejoy was plaintiff's treating psychiatrist during this time and prescribed medication to help with sleep, anxiety and pain. Neither Dr. Lovejoy nor Ms. Barthelmess reports much at all about panic attacks, and a panic disorder was only mentioned on one occasion in July 2000 when Dr. Lovejoy noted it should be ruled out. This evidence provides little support for plaintiff's assertions of severe limitations due to panic attacks, and the state agency medical advisors who reviewed the evidence concluded that her mental impairments were not "severe" during the period being considered.

The administrative law judge found that plaintiff would have some impairment of concentration due to anxiety and pain but would be able to understand, remember and carry out simple job instructions. While this finding is reasonable in light of the evidence, in his hypothetical question, the administrative law judge asked the vocational expert to consider that plaintiff should have minimal interaction with the public or co-workers, limitations also supported by the evidence.

The administrative law judge considered the various reports from plaintiff relative to panic attacks and determined that her report to Mr. Martin on February 13, 2001 that she had 2-3 per week was not credible given her level of activity and the conflicting reports that she was having 2-4 attacks per month. It is noted that this was her testimony at all three hearings, two of which were less than one year after date last insured. The administrative law judge also concluded that, even if plaintiff had 2-4 panic attacks per month, the level of her daily activities was inconsistent with the extent of disability she alleged as resulting from them. These findings are supported by the substantial evidence in the record.

While plaintiff alleged significant limitations on her activities due to right upper extremity restrictions and panic attacks, the administrative law judge, taking account of the evidence as well as his observations of plaintiff at the hearing, concluded that she was not completely credible. In support of this finding, he cited to the lack of treatment for shoulder, arm or hand problems subsequent to 1999; plaintiff's ability to attend college full-time despite these impairments; daily activities including driving herself to Marshall University and successfully completing her degree in August 2001, doing laundry, cooking, housework, homework, grocery shopping with her husband and managing the family finances; and her conflicting reports as to the number of panic attacks she experienced during the relevant time. In view of the evidence, and taking account of the administrative law judge's "opportunity to observe the demeanor and to determine the credibility of the claimant," these findings are entitled to "great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Finally, as noted, testimony from a vocational expert was taken at the hearing. In response to hypothetical questioning which included plaintiff's age, education, work experience and a reasonably accurate profile of her functional capacity and overall medical condition, this witness

testified that there were significant numbers of light and sedentary jobs in the national economy which plaintiff could perform.

Resolution of conflicts in the evidence is within the province of the Commissioner, not the courts, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), and if the Commissioner's findings are supported by substantial evidence this Court is bound to uphold the decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). In the present case, the evidence, though somewhat conflicting, provides substantial support for the Commissioner's findings with respect to plaintiff's impairments and residual functional capacity. Under such circumstances, the decision of the Commissioner must be affirmed.

On the basis of the foregoing, it is **ORDERED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted and the decision of the Commissioner affirmed. All matters in this case being concluded, it is **ORDERED** dismissed and retired from the Court's docket.

        ENTER:      March 31, 2009

_/s/ Maurice S. Taylor, Jr._
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE

7